1
2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3
4
5
6
7
8
9

Martin S. Rood,                                    )
                                                   )
                    Plaintiff,                     )        Case No.: 2:12-cv-00893-GMN-NJK
          vs.                                      )
                                                   )                **ORDER**
Arthur F. Nelson; Don Foster Scoggins; Jack        )
P. Gillespie; and Appraisers of Las Vegas,         )
                                                   )
                    Defendants.                    )
_____                )

10
11
12
13
14

          Pending before the Court is a Motion for Summary Judgment, (ECF No. 40), filed by

Plaintiff Martin S. Rood on August 20, 2013, and a Counter Motion for Summary Judgment,

(ECF No. 48), filed by Defendant Jack P. Gillespie on September 18, 2013.  Plaintiff

subsequently filed his Response to Defendant Gillespie's Motion, (ECF No. 50), on October

15, 2013, and Defendant Gillespie filed his Reply, (ECF. No. 55), on November 1, 2013.

15

## I.    BACKGROUND

16
17
18
19
20

          On May 25, 2012, Plaintiff filed the instant action against Defendants Arthur F.

Nelson, Don Foster Scoggins, Jack P. Gillespie, and Appraisers of Las Vegas ("ALV") (collectively,

"Defendants"), alleging claims for negligence and professional malpractice arising out of a real

estate appraisal ("the Appraisal") prepared by Defendants in August 2006 for two contiguous

parcels of property located in Las Vegas, Nevada ("the Property"). (Am. Compl., ECF No. 17.)

21
22
23
24
25

          Plaintiff alleges that the Appraisal was commissioned in 2006 by Gary Ryno, principal

of Hallock Ryno Investments, Inc. ("HRI"), and was subsequently featured within a Specific

Offering Circular distributed by HRI to solicit investors for shares of HRI's interest in the

$1,600,000 mortgage loan HRI had issued to the owner of the Property, Cielo Vista, LLC.

(Rood Aff., 2:¶¶4-6, Ex. A to Pl.'s Mot., ECF No. 40-1.)  Plaintiff alleges that he relied on the

1   Appraisal's conclusion that the property had a value of $5,490,000 when he invested

2   $800,000.00 to acquire a 50% interest in the Cielo Vista loan in 2007. (*Id.* at 2:¶¶6-8.)

3       The publicly recorded documents submitted to the Court indicate that in June 2009 the

4   property was sold at a Trustee's Sale after Cielo Vista, LLC defaulted on the loan. (*See*

5   Trustee's Deed Upon Sale, Ex. H to Pl.'s Mot., ECF No. 40-5.)  At that time, Plaintiff

6   maintained his 50% interest; HRI owned a 32.8125% interest; and the remaining investors,

7   including Gary Ryno, owned interests between 1.5% and 3.1%. (*Id.*)  At the Trustee's Sale,

8   Plaintiff, HRI, and the remaining investors purchased the property for $1,200,000 in

9   satisfaction of the loan. (*Id.*)

10      Plaintiff alleges that HRI was subsequently "taken over by a receiver." (Rood Aff. at

11  3:¶¶12-13.)  In June 2010, the court-appointed receiver conveyed HRI's interest by quitclaim

12  deed to Regal Financial Bank for no monetary consideration. (*See* Quitclaim Deed, Ex. I to

13  Pl.'s Mot., ECF No. 40-5.)  Plaintiff alleges that he recovered only $153,000 of his $800,000

14  investment when Regal Financial Bank sold the property for $330,000 in February 2012. (Rood

15  Aff. at 3:¶14.)

16      Plaintiff alleges that the actual value of the property as of the date of the Appraisal was

17  $2,260,000, and claims that if he had known this at the time, he would not have invested in the

18  Cielo Vista Loan. (*Id.* at 3:¶¶10-11.)

19      On December 30, 2013, the Court ordered that default be entered as to Defendants

20  Nelson and Scoggins, as both failed to answer, respond, or otherwise appear in this action after

21  process was properly served upon them. (ECF No. 57.)  At that time, the Court declined to

22  order that default be entered as to Defendant ALV based on uncertainty as to whether Plaintiff

23  had properly effected service. (*Id.*)  To date, Defendant ALV has not made any filings or

24  appearances in this action.

25  / / /

II.    **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

1   the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

2   398 U.S. 144, 159–60 (1970).

3        If the moving party satisfies its initial burden, the burden then shifts to the opposing

4   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

5   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

6   the opposing party need not establish a material issue of fact conclusively in its favor.  It is

7   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

8   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

9   *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

10  summary judgment by relying solely on conclusory allegations that are unsupported by factual

11  data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

12  beyond the assertions and allegations of the pleadings and set forth specific facts by producing

13  competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

14       At summary judgment, a court's function is not to weigh the evidence and determine the

15  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

16  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

17  in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

18  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

19  **III.   DISCUSSION**

20       As an initial matter, the Court finds it necessary to construe Plaintiff's first claim for

21  relief pursuant to Nevada law.  While the Amended Complaint describes this as a claim for

22  "negligence," (Am. Compl. 4:20, ECF No. 17), Plaintiff's Motion discusses the elements of

23  both professional negligence and the separate but related tort of negligent misrepresentation.

24  (*See* Pl.'s Mot. 9:2-10:2, ECF No. 40.)  An examination of Nevada precedent reveals that

25  negligent misrepresentation is the proper vehicle for claims, such as Plaintiff's, seeking

1    recovery for damages caused by reliance on a false appraisal whose creator failed to exercise

2    reasonable care. *See Goodrich & Pennington Mortgage Fund, Inc. v. J.R. Woolard, Inc.*, 101

3    P.3d 792, 793-95 (Nev. 2004).  Accordingly, the Court will construe Plaintiff's first cause of

4    action as seeking recovery under a theory of negligent misrepresentation.

5           A.  <u>Defendant Gillespie's Motion for Summary Judgment</u>

6           Defendant Gillespie argues that summary judgment in his favor is warranted because:

7    (1) Plaintiff's claims are barred by the applicable statute of limitations; (2) Plaintiff has failed

8    to produce evidence demonstrating that his reliance on the Appraisal was foreseeable; and (3)

9    that the economic loss doctrine bars recovery under the causes of action set forth in the

10   Amended Complaint.  The Court will address each of these arguments in turn.

11          1.  *Statute of Limitations*

12          Defendant first argues that this action is barred by the relevant statute of limitations,

13   because six years elapsed between the time Plaintiff first viewed the Appraisal and the filing of

14   the instant action. (Def.'s Mot. 8:16-28, ECF No. 47.)  Indeed, claims for negligent

15   misrepresentation are subject to a three-year statute of limitations under Nevada law. *Kancilia*

16   *v. Claymore & Dirk Ltd. P'ship*, 2014 WL 3731862, at *1 (Nev. 2014) (citing *Nevada State*

17   *Bank v. Jamison Family P'ship*, 801 P.2d 1377, 1382 (Nev. 1990)).  Similarly, as Plaintiff's

18   claim for professional malpractice is based on alleged mistakes in the Appraisal, a three-year

19   limitation period applies to this claim as well. *See Millspaugh v. Millspaugh*, 611 P.2d 201, 202

20   (Nev. 1980) (holding that a three-year limitations period applies to all actions grounded in fraud

21   or mistake under Nevada law).

22          However, Defendant Gillespie fails to consider that the statute of limitations regarding

23   these claims began running, not at the moment that Plaintiff first set eyes upon the Appraisal,

24   but instead "upon [Plaintiff's] discovery of the facts constituting the fraud or mistake." *See*

25   Nev. Rev. Stat. § 11.190(3)(d).  Plaintiff claims, and Defendant Gillespie does not dispute, that

1    Plaintiff did not become aware of the mistakes in the Appraisal until the Property was sold on

2    June 17, 2009.  Because Plaintiff filed this action on May 25, 2012, less than three years after

3    he discovered the facts giving rise to his claims, this case was properly filed within the

4    limitation period.  Accordingly, the Court finds that summary judgment is not warranted on this

5    ground.

6                        *2.   Foreseeability of Reliance*

7                Next, Defendant Gillespie argues that he is entitled to summary judgment because

8    Plaintiff's reliance on the Appraisal was not foreseeable.  Under Nevada law, a plaintiff may

9    recover for negligent misrepresentation only if he is "the person or one of a limited group of

10   persons for whose benefit and guidance [the defendant] intend[ed] to supply the information or

11   kn[ew] that the [original] recipient intend[ed] to supply it." *Copper Sands Homeowners Ass'n.*

12   *Inc. v. Copper Sands Realty, LLC*, 2:10-cv-00510, 2012 WL 987996, at *4 (D. Nev. Mar. 20,

13   2012); Restatement (Second) of Torts § 552 (1977).  Defendant Gillespie claims that at the time

14   he finished his work for the Appraisal on August 28, 2006, Gary Ryno had not mentioned that

15   the Appraisal would be sent to potential investors.  Gillespie further alleges that on October 11,

16   2006, Defendant Scoggins gave consent for the Appraisal to be used "as part of a real estate

17   securities offering" without Gillespie's knowledge or consent. (Def.'s Mot. 9:12-16, ECF No.

18   48.)  Notably, Defendant Gillespie fails to indicate what he believed the purpose and intended

19   use of the Appraisal were prior to this "unilateral change."

20               Nevertheless, Defendant Gillespie's self-serving narrative is belied by Gary Ryno's

21   August 15, 2006, letter that initially commissioned the Appraisal.  This letter states that the

22   Appraisal would be "used in [HRI]'s Specific Offering Circular." (Ex. E to Pl.'s Mot. 42-43,

23   ECF No. 40-3.)  Despite this clarity, Defendant Gillespie still manages to feign surprise that the

24   Appraisal was subsequently included in HRI's Specific Offering Circular, which was

25   distributed on November 28, 2006. (Ex. D to Pl.'s Mot., ECF No. 40-1.)  Plaintiff received the

1  very same Specific Offering Circular, which solicited the investment at the center of this

2  dispute.

3          Therefore, the Court finds that Defendant Gillespie's contention that the purpose of the

4  Appraisal was changed without his knowledge on October 11, 2006, lacks support and is

5  contradicted by the evidence on the record.  Because Ryno's commissioning letter stated the

6  intended use of the Appraisal clearly and accurately, Plaintiff was among the foreseeable

7  "limited group of persons for whose benefit and guidance" the Appraisal was produced. *Copper*

8  *Sands Homeowners Ass'n. Inc.*, 2012 WL 987996, at *4.  Therefore, Defendant Gillespie has

9  not shown that he is entitled to summary judgment on this ground.

10                          *3.   Economic Loss Doctrine*

11          Finally, Defendant Gillespie argues that the economic loss doctrine prohibits Plaintiff

12  from recovering in this case.  This doctrine "bars unintentional tort actions when the plaintiff

13  seeks to recover purely economic losses." *Terracon Consultants W., Inc. v. Mandalay Resort*

14  *Grp.*, 206 P.3d 81, 86 (Nev. 2009).  Defendant Gillespie's argument is misplaced, however, as

15  the Nevada Supreme Court has repeatedly stated that this doctrine does not apply to claims for

16  negligent misrepresentation. *See, e.g.*, *Id.* at 87-88 ("[N]egligent misrepresentation is a special

17  financial harm claim for which tort recovery is permitted because without such liability the law

18  would not exert significant financial pressures to avoid such negligence.").  Accordingly, the

19  Court finds that summary judgment is not warranted based on the economic loss doctrine.

20          Thus, Defendant Gillespie has failed to meet his burden to demonstrate that Plaintiff has

21  not sufficiently supported an essential element of his claims or that judgment is otherwise

22  warranted as a matter of law.  Therefore, the Court will deny Defendant Gillespie's Motion for

23  Summary Judgment. (ECF No. 48).

24          *B.  Plaintiff's Motion for Summary Judgment*

25          In his Motion, Plaintiff argues that he has provided substantial evidence to support all

1  essential elements of his negligent misrepresentation claim and that Defendants have failed to

2  raise any genuine disputes of material fact.  Plaintiff requests that summary judgment be

3  entered against all Defendants in this action.  Prior to assessing whether summary judgment is

4  warranted, however, the Court must determine whether Plaintiff's Motion can properly be

5  considered as to Defendants ALV, Scoggins, and Nelson, given that the Court has questioned

6  the service of process upon the first and the latter two are in default.

7         *1.  Applicability of Plaintiff's Motion to Defendants ALV, Scoggins, and Nelson*

8      "[I]n the absence of proper service of process, the district court has no power to render

9  any judgment against the defendant's person or property unless the defendant has . . . waived

10  the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007) (citing *Mason v.*

11  *Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992)).  Previously, the Court was reluctant

12  to enter default against Defendant ALV, as Plaintiff had not provided evidence that the

13  Amended Complaint had been served upon this defendant. (ECF No. 57.)  However, upon

14  further examination, the Court finds that Plaintiff has effected proper service upon Defendant

15  ALV in this action.

16      Pursuant to the Federal Rules of Civil Procedure, corporations "may be served either (1)

17  in accordance with the law of the state in which the district court is located, or (2) by delivering

18  a copy of the summons and the complaint to an officer, a managing or general agent, or to any

19  other agent authorized by appointment or by law to receive service of process." *Chan v. Soc'y*

20  *Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994) (internal citations omitted).  Nevada Rule

21  of Civil Procedure 4(d)(1) provides that a plaintiff who cannot serve a Nevada corporation's

22  registered agent or officer for any reason may effect proper service by "delivering to the

23  secretary of state, or the deputy secretary of state, a copy of [the] summons attached to a copy

24  of the complaint, and by posting a copy of said process in the office of the clerk of the court in

25  which such action is brought or pending . . . ." Nev. R. Civ. P. 4(d)(1).  However, this method

1  of service is not valid unless the plaintiff provides "an affidavit setting forth the facts showing

2  that personal service on or notice to the [registered agent or corporate officers] cannot be had in

3  the manner provided in this subsection within the state." *Id.*

4        In this case, Plaintiff's counsel filed a declaration on June 5, 2012, indicating that neither

5  the registered agent nor any corporate officer of Defendant ALV could be located for service.

6  (ECF No. 6.)  Plaintiff subsequently filed a certification from the Office of the Nevada

7  Secretary of State, dated July 9, 2012, acknowledging receipt of the summons and complaint on

8  behalf of Defendant ALV. (ECF No. 11.)  Plaintiff also included an affidavit stating that the

9  process was posted in the clerk's office of this Court. (*Id.*)  Thus, the Court finds that Plaintiff

10  satisfied the requirements of Nevada Rule of Civil Procedure 4(d)(1), and therefore effected

11  proper service of process upon Defendant ALV on July 9, 2012.

12        The Court's prior reluctance to enter default against Defendant ALV arose from the fact

13  that Plaintiff has not provided proof of service regarding the Amended Complaint. (ECF No.

14  57.)  Be that as it may, "No service is required on a party who is in default for failing to appear.

15  But a pleading that asserts a new claim for relief against such a party must be served on that

16  party under Rule 4." Fed. R. Civ. P. 5(a)(2).  This rule does not require a finding by a court that

17  a party has been adjudicated as "in default," but is instead triggered immediately upon a party's

18  failure to appear. *See Anunciation v. W. Capital Fin. Servs. Corp.*, 97 F.3d 1458, 1996 WL

19  534049, at *3 (9th Cir. Sept. 19, 1996); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S.

20  & Canada*, 674 F.2d 1365, 1368 (11th Cir. 1982).

21        Under the Federal Rules of Civil Procedure, "A defendant must serve an answer within

22  21 days after being served with the summons and complaint." Fed. R. Civ. P. 12.  As service

23  occurred on July 9, 2012, Defendant ALV had through July 30, 2012, to answer or otherwise

24  respond to the Complaint.  When Defendant ALV failed to answer Plaintiff's complaint, file a

25  responsive motion, or otherwise appear by that date, it became a "party in default" under Rule

5(a)(2).  Therefore, because the claims for relief in the Amended Complaint are identical to those asserted in the original Complaint, (*compare* Am. Compl. 4-6, ECF No. 17 *with* Compl. 4-6, ECF No. 1), Plaintiff had no obligation to serve the Amended Complaint upon Defendant ALV when it was filed with the Court on August 21, 2012. *See* Fed. R. Civ. P. 5(a)(2). Accordingly, because Plaintiff properly served process upon Defendant ALV, the Court will assess whether summary judgment against this defendant is warranted pursuant to Plaintiff's Motion.

Additionally, the Court finds that consideration of Plaintiff's Motion as to Defendants Scoggins and Nelson is appropriate.  Though default was entered against these defendants on December 31, 2013, numerous district courts have recognized that, "Nothing in Federal Rule of Civil Procedure 56 appears to prevent a party from seeking summary judgment against a party in default." *Am. S. Ins. Co. v. Hayslett*, No. 4:09-cv-1850, 2011 WL 3444219, at *2 (E.D. Mo. Aug. 8, 2011); *Allstate Ins. Co. v. Davis*, No. 5:08-cv-39 2008 WL 2428871, at *1 (E.D. Ark. June 12, 2008).  In fact, a district court may grant a motion for summary judgment against a defendant in default even if, as in the instant case, the movant was excused from serving the motion pursuant to Rule 5(a)(2). *See Nautilus Ins. Co. v. Roberts*, 1:12-cv-22, 2013 WL 1411503, at *2 n.1 (E.D. Mo. Apr. 8, 2013); *Davis*, 2008 WL 2428871, at *1.  Therefore, the Court will determine whether summary judgment is warranted as to Defendants Scoggins and Nelson pursuant to Plaintiff's motion.

### 2.  *Substance of Plaintiff's Motion*

In recognizing the tort of negligent misrepresentation, the Nevada Supreme Court adopted the construction contained within Second Restatement of Torts, Section 552. *See, e.g.*, *Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978).  A claim for negligent misrepresentation requires: (a) that a defendant made a false representation; (b) that the representation was made in the course of the defendant's business or in any action in which

he has a pecuniary interest; (c) the representation was for the guidance of others in their

business transactions; (d) the representation was justifiably relied upon; (e) that such reliance

resulted in pecuniary loss to the relying party; and (f) that the defendant failed to exercise

reasonable care or competence in obtaining or communicating the information. *G.K. Las Vegas*

*Limited Partnership v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev.

2006).

### a. False Representation

Notably, while Defendant Gillespie's response to Plaintiff's Motion strongly emphasizes

that he believes he did not owe a duty to Plaintiff, Defendant Gillespie makes no attempt to

argue that the Appraisal was not a "false representation" of the Property's value.  In his Motion,

Plaintiff states that the Appraisal misrepresented the value of the Property by: focusing on sales

within the "downtown core" instead of parcels that were comparable to the Property; failing to

address the topography of the Property; and not considering the uses of surrounding parcels

including "several funeral homes, cemeteries and homeless shelters." (Pl.'s Mot. 6:13-18, ECF

No. 40.)

A report submitted by Plaintiff's expert, Tio DiFederico, supports Plaintiff's contentions

that Defendants falsely represented the value of the Property.  After carrying out a thorough

analysis of Defendants' appraisal and performing an appraisal of his own, DiFederico observed,

"The [Defendants] . . . focused on sales located in the downtown core, which were

commanding substantially higher unit prices than those like the subject on the fringe of the

downtown boundaries." (Ex. G to Pl.'s Mot. 14, ECF No. 40-5.)  Similarly, DiFederico asserted

that the Appraisal made comparisons only to parcels with level topography, failing to account

for the "steep slope" on the Property. (*Id.*)  Perhaps DiFederico's most compelling point of

analysis is his observation that the Appraisal failed to explain how the property increased from

a value of $1,200,000 on March 29, 2005, to $5,490,000 on August 19, 2006. (*Id.*)  Indeed, the

Appraisal implicitly claimed that the Property increased in value by 357.5% over a period of less than seventeen months.  Therefore, through the analysis contained in DiFederico's report as well as the implicit discrepancies in the Appraisal, Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Defendants falsely represented the value of the Property.  Because Defendant Gillespie makes no attempt to argue that the Appraisal was not a false representation and the record contains no evidence to this effect, the Court finds that summary judgment is warranted as to this element.

### b.  Course of Defendants' Business

It is undisputed on the record that the Appraisal was conducted as part of Defendants' business as certified general appraisers in Nevada. (*See, e.g.*, Ex. E to Pl.'s Mot. 4-5, ECF No. 40); (Def.'s Mot. 3:17-20.)  Thus, summary judgment is warranted as to this element of Plaintiff's negligent misrepresentation claim.

### c.  For the Guidance of Others in Their Business Transactions

As discussed previously, Ryno's commissioning letter demonstrates that the Appraisal was intended to be used to solicit investors for the Cielo Vista loan from the outset.  Therefore, pursuant to the analysis in Section III, Part A, Subsection 2, *supra*, the Court finds that the Appraisal was performed to guide others in their business transactions, and will grant summary judgment as to this element.

### d.  Justifiable Reliance

Justifiable reliance, under Nevada law, requires a showing by a plaintiff that the alleged false representation played a material and substantial part in leading the plaintiff to adopt his or her particular choice. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (plaintiff was required to show she actually read or heard the alleged misrepresentation to establish the justifiable reliance element in a fraud claim) (citing *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1414 (D. Nev. 1995)).  The HRI Specific Offering Circular

was sent to residents of Washington, where Plaintiff has lived at all times relevant to this case. (Ex. D to Pl.'s Mot. 19, ECF No. 40-1.)  This circular prominently featured the Defendants' conclusion as to the Property's value, and included the full Appraisal report. (*Id.* at 20.) Plaintiff claims that he chose to invest in the Cielo Vista loan because he believed the value of the Property was $5,490,000 as stated in the Appraisal.  There is no evidence on the record indicating that Plaintiff accessed any other source of information regarding the value of the Property.  Concordantly, given the length and thoroughness of the Appraisal, the Court finds that the falsity of Defendants' valuation would not have been apparent to an individual of normal competence without expert assistance.  Furthermore, Defendant Gillespie does not argue that Plaintiff's reliance upon the appraisal was not justified.  Thus, Plaintiff has satisfied his evidentiary burden, and summary judgment is warranted as to this element.

### e.   Pecuniary Loss

Plaintiff asserts, and Defendant Gillespie does not dispute, that Plaintiff invested $800,000 for a 50% share in the underlying loan with the understanding that his investment represented 29% of the Property's value. (Ex. A to Pl.'s Mot. 3:21-22, ECF No. 40-1.)  It is also undisputed that Plaintiff was ultimately able to recover only $153,000 after the Trustee's sale. (*Id.* at 3:17-19.)  Therefore, Plaintiff has established that his reliance on the Appraisal caused a pecuniary loss of $647,000, and the Court will grant Plaintiff's Motion for Summary Judgment as to this element.

### f.   Failure to Exercise Reasonable Care or Competence

Numerous courts in other jurisdictions have held that appraisers owe a duty to adhere to the standards set forth in the Uniform Standards of Professional Appraisal Practice ("USPAP"). *See, e.g.*, *F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 926-30 (N.D. Ill. 2013); *F.D.I.C. v. Hoyle*, 10-cv-4245, 2012 WL 4049808, at *5 (E.D.N.Y. Aug. 2, 2012).  Nevada has expressly adopted the USPAP as the standard to which licensed appraisers must adhere. Nev. Admin. Code §

1    645c.400.  Indeed, the first criterion used by the Nevada Commission of Appraisers to

2    determine whether an appraiser is "guilty of unprofessional conduct" is whether he has "failed

3    to prepare an appraisal in compliance with the USPAP." Nev. Admin. Code § 645c.405.  Thus,

4    the Court finds that under Nevada law, appraisers owe a duty to adhere to the standards set

5    forth in the USPAP.

6            Tio DiFederico's report identifies several ways in which the Appraisal failed to comply

7    with the USPAP. (*See* Ex. G to Pl.'s Mot. 7-13, ECF No. 40-5.)  Among the noted failures are

8    the Appraisal's comparisons to values of parcels in a dissimilar area, the lack of consideration

9    given to the Property's topography, the omission of the uses of surrounding properties, and the

10   utilization of a market value definition without an attributed source. (*Id.*)  Thus, Plaintiff has

11   provided sufficient evidence to support his contention that Defendants failed to exercise

12   reasonable care that is not disputed by Defendant Gillespie.  Therefore, summary judgment is

13   warranted as to this element of Plaintiff's negligent misrepresentation claim.

14           Because Plaintiff has provided sufficient evidentiary support for every element of his

15   negligent misrepresentation claim and Defendants have failed to raise any genuine disputes of

16   material fact, the Court will grant Plaintiff's Motion for Summary Judgment.  Additionally, as

17   Plaintiff acknowledges that both of his claims seek recovery for the same injury, (Pl.'s Reply

18   6:7-10, ECF No. 50), granting summary judgment as to the negligent misrepresentation claim

19   renders the professional negligence claim moot. *See, e.g.*, *Elyousef v. O'Reilly & Ferrario,*

20   *LLC*, 245 P.3d 547, 549 (Nev. 2010) (holding that "a plaintiff can recover only once for a

21   single injury even if the plaintiff asserts multiple legal theories").

22   **IV.    CONCLUSION**

23           **IT IS HEREBY ORDERED** that Defendant Gillespie's Motion for Summary Judgment

24   (ECF No. 48) is **DENIED.**

25           **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF

No. 40) is **GRANTED.**  The Clerk is instructed to enter judgment in favor of Plaintiff Martin
S. Rood and against all Defendants in the amount of $647,000, jointly and severally.

  **DATED** this 15th day of September, 2014.

              _____

              Gloria M. Navarro, Chief Judge
              United States District Court